UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

Jeremiah F. Herbert,

                            Plaintiff,

                -against-

Charles Lynch, et al.,

                          Defendants.

---------------------------------------------------------------X

7:22-CV-6303 (NSR) (VR)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 1/2/2024

**VICTORIA REZNIK, United States Magistrate Judge:**

## I.   INTRODUCTION

Plaintiff Jeremiah F. Herbert brings this 42 U.S.C. § 1983 action against six Sullivan County Jail officers and officials, stemming from an incident on July 6, 2022.  Pending before the Court are Plaintiff's five letter motions, which seek to impose spoliation sanctions on Defendants for allegedly failing to preserve a video of a "hallway" at the Sullivan County Jail, which Plaintiff says contained relevant footage of the July 6 incident.  (*See* ECF No. 66, 70, 74, 76, 80).  After receiving Plaintiff's initial motion, the Court directed the parties to submit evidence substantiating their positions on the existence or lack thereof of the hallway video. (ECF No. 69).  Having given the parties a chance to support their positions, the Court now addresses Plaintiff's letter motions.

For the reasons below, Plaintiff's letter motions for Rule 37(e) spoliation sanctions are **DENIED**.  The Court concludes that Plaintiff has met his burden of establishing that the hallway video did exist.  Yet Plaintiff has not met his burden of demonstrating that Defendants had a duty to preserve the hallway video at the time it was likely destroyed in the ordinary course of

business, through Defendants' preexisting retention/destruction policy.

## II. <u>BACKGROUND</u>

### A. Plaintiff's Allegations

In July 2022, Plaintiff filed this 42 U.S.C. § 1983 action against Sergeants Lynch, Niosi, and Moyer; Corporal Sherola; Warden Harold L. Smith; and Deputy Dilpalma,[1] alleging as follows. (ECF No. 2 at 1–3).[2]  Plaintiff was held at Sullivan County Jail as a pretrial detainee. (*Id.* at 2).  On June 15, 2022, Plaintiff informed Lynch, Niosi, and Sherola of a "keep away/flight risk" order in place between Plaintiff and Dino Cantic, another inmate.  (*Id.* at 9).  On July 6, 2022, while Plaintiff was in the general population, he was attacked by Cantic.  (*Id.*).  During the attack, Defendants remained in the intake room, observing the attack via video camera.  (*Id.*).  About fifteen minutes later, Defendants deployed pepper spray, handcuffed Plaintiff, and took Plaintiff to a restricted area where Defendants punched and beat Plaintiff, striking him in the head, mouth, and eye.  (*Id.* at 10).  Despite multiple requests for medical attention, Plaintiff was then denied medical care for his injuries.  (*Id.* at 11–12).  Instead, he was placed in an unlit cell without clothes or bedding.  (*Id.* at 12–13).

Construed liberally,[3] Plaintiff raises claims under the Fourteenth Amendment's Due Process Clause[4] for: (1) Defendants' failure to protect him from Cantic; (2) Defendants' use of

---

[1] The parties' filings include various spellings for Deputy Dilpalma's name.  (*See, e.g.*, ECF Nos. 2 at 1, 7–10, 12–14, 16; 78-3 at 1; 78-4 at 1–3).  The Court spells Deputy Dilpalma's name as Plaintiff identifies him on page 1 of the Complaint.  (ECF No. 2 at 1).

[2] All page numbers to documents filed on ECF refer to pdf pagination.

[3] Mindful of Plaintiff's pro se status, the Court must liberally construe Plaintiff's filings to "raise the strongest arguments that they suggest."  *Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018).

[4] A pretrial detainee's claims for violations of the United States Constitution arise under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, because "pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise" and a pretrial "detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (alterations and internal quotations marks omitted).

excessive force; (3) Defendants' deliberate indifference to Plaintiff's serious medical needs; and

(4) Defendants having subjected Plaintiff to unreasonable conditions of confinement.

### B. Plaintiff's Rule 37(e) Motions for Spoliation Sanctions

#### 1. Plaintiff's Initial Motion

On August 31, 2023,[5] one day before the close of discovery,[6] Plaintiff filed the first of

five letter motions, which sought to impose spoliation sanctions on Defendants, under Rule 37(e)

of the Federal Rules of Civil Procedure, for their alleged failure to preserve video of a "hallway"

at the Sullivan County Jail.  According to Plaintiff, the purported video contained relevant

footage of the July 6, 2022, incident relating to Defendants' use of excessive force.  (*See* ECF

No. 66).  Plaintiff claims that the hallway video would "show Plaintiff was assaulted by

Defendants without provocation, physical blows, excessive force, and malicious conduct by each

[of the] Defendants."  (*Id.* at 2).  In support, Plaintiff asserts that on August 30, 2023, at a

"telephone conference with Defendants' Counsel, Counsel admitted to not having preserved

video of hallway, Counsel stated Video Discovery Evidence was destroyed and Footage

disappeared and cannot be replaced."  (*Id.* at 1).

#### 2. Defendants' Initial Response

On September 12, 2023, Defendants responded by letter, stating that counsel asked "the

Sullivan County Jail administration to identify whether a video of the hallway on July 6, 2022

was in [their] possession" and that counsel determined that "no footage of any kind

exists . . . because there was never a recording of Plaintiff walking in a hallway on July 6, 2022."

---

[5] Under the "prison mailbox rule," a pro se inmate's submission is deemed filed when it is deposited in the institution's internal mail system.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), *modified on other grounds*, 25 F.3d 81 (2d Cir. 1994).  Plaintiff's letter motion was deemed filed on August 31, 2023, as indicated in the affidavit of service annexed to the motion.  (ECF No. 66 at 17).

[6] ECF No. 49 (extending discovery until September 1, 2023).

(ECF No. 68).

### 3. The Court's Order for Substantiation of the Parties' Respective Positions

On September 19, 2023, the Court directed the parties to provide evidentiary support for their respective positions about whether the hallway video ever existed and, if so, whether Defendants were under a duty to preserve it.  (ECF No. 69).

### 4. Plaintiff's Four Other Letter Motions

After entry of the Court's order, the Court received three more letter motions from Plaintiff, seeking to impose spoliation sanctions.  (ECF Nos. 70, 74, 76).  The first of those letter motions, deemed filed on September 14, 2023,[7] and received by the Court on September 20, 2023, is a duplicate of Plaintiff's August 31 letter motion.  (*Compare* ECF No. 66 at 1–3, *with* ECF No. 70 at 2–4).  The remaining three letter motions are duplicative of each other and appear responsive to the Court's September 19, 2023, order.  (ECF No. 74, 76, 80).  Plaintiff writes:

> On July 6th, 2022, the Hallway footage did indeed exist and defendants each knew because plaintiff did engage in grievances and formal complaint letters to Harold Smith on July 7th, 2022 about being physically abused, assaulted and exposed to hands of danger.  Charles Lynch; Philip Niosi, and Stacy Moyer knew plaintiff would be moving forward with a Civil Rights Litigation from the grievances and did intentionally loose [sic] Video-Surveillance of hallway footage to violate Fed. R. Civ. P. 37(e).

(ECF No. 74 at 2).  Plaintiff further asserts that "[o]n July 6th, 2022, each defendant took measures to destroy hallway footage that did exist inside a brand new facility with high tech video surveillance."  (*Id.* at 3).  "Defendants did not provide or submit any form of declaration/affidavit to support or explain why video footage was not preserved."  (*Id.*).  Yet, "Defendants supplied video surveillance from B Pod Housing unit (see exhibit A), Medical Unit (see exhibit B), Intake Unit (see exhibit C), but no video surveillance of any of the hallways even

---

[7] Under the "prison mailbox rule," *see supra* note 5, the letter motion was deemed filed on September 14, 2023, as indicated on the envelope's postmark (ECF No. 70 at 5).

though cameras did in fact exist in all hallways of that facility." (*Id.*). Plaintiff attaches

photocopies of three CDs that contain the surveillance videos from B Pod Housing Unit, the

Medical Unit, and the Intake Unit (*id.* at 5–7), and an excerpt from Plaintiff's deposition

transcript, where he and Defendants' counsel discuss the July 6, 2022, incident and the three

foregoing videos (*id.* at 8–16).

    5.  Defendants' Response

    Defendants respond that "whether the alleged incident occurred or not, Plaintiff cannot

establish that Defendants had notice of a video of Plaintiff being hit in the hallway by

Defendants nor is he able to prove that Defendants should have known about the alleged video."

(ECF No. 78 at 2). In other words, Defendants appear to argue that whether the video ever

existed, they had no duty to preserve it. (*See id.*). Defendants assert that "Plaintiff wrote a vague

reference in his grievance that Sergeant Moyer, Corporal Sherota, and Sergeant Niosi targeted

him." (*Id.*). In response, "Corporal Calangelo asked Plaintiff in writing 'How did the

supervisors specifically target you? What actions occurred?'" (*Id.*). But "Plaintiff did not

respond to those inquiries, and, as a result, Plaintiff's grievance was viewed without merit."

(*Id.*). According to Defendants, "[w]ithout this information, Defendants were unable to identify

any video where Plaintiff was allegedly targeted, let alone injured by Defendants." (*Id.*).

Defendants also refute Plaintiff's allegation that Defendants' counsel had admitted to not having

preserved the video, as "Defendants' counsel did not make this statement." (*Id.* at 3). Finally,

Defendants argue that Plaintiff did not meet his burden of proving that Defendants took measures

to destroy the video and Plaintiff's motion is only supported by his "self-serving, conclusory

statement[s]." (*Id.*).

    In support, Defendants attach two Inmate Grievance Forms that Plaintiff filed on July 6,

2022.  (ECF Nos. 78-3, 78-4).  In the first grievance, Plaintiff alleged that Deputy Dilpalma "allowed [a] documented fight risk out of his cell to cause my safety to be jeopardize[d]" and "Sgt. Niosi and Cpl. Sherola improper[ly] denied me my right to immediate protection from being assaulted."  (ECF No. 78-3 at 1).  In the second grievance, Plaintiff alleged that Deputy Dilpalma "allowed [a] documented fight risk to cause physical attacks against me; while [the] incident took place[,] Cpl. Sherola and Sgt. Phil Niosi and Sgt. M. Moyer did specifically target me and did not provide[] me with adequate medical care."  (ECF No. 78-4 at 1).  On July 13, 2022, Corporal Calangelo responded to Plaintiff's grievances by asking for documentation and additional information to investigate Plaintiff's claims.  (ECF Nos. 78-3 at 2; 78-4 at 3).

Defendants also attach an affidavit from Warden Smith, which states that Sullivan County Jail has a video recording system "in which [a] video lasts thirty (30) days until that video is automatically recorded over."  (ECF No. 78-1 at 2).  Warden Smith also states that "Plaintiff did not respond to Corporal Calengelo's inquiry" for more information about the July 6 incident.  (*Id.*).  As a result, it was not until November 28, 2022 (which happens to be when Plaintiff's complaint was served[8]) that Warden Smith "had notice of Plaintiff's allegation against Sergeant Moyer, Corporal Sherota[,] Sergeant Niosi for the first time, which was past the third (30) day recording period."  (*Id.*).

Finally, Defendants attach an affirmation from Defendants' counsel, affirming that he had "informed Plaintiff that no video exists of him walking through any hallway" and that he did not represent to Plaintiff that such a video had not been preserved.  (ECF No. 78-2 at 1).

---

[8] *See* ECF Nos. 14–19 (U.S. Marshal's Process Receipt and Return of Service Executed).

6.  <u>Plaintiff's Replies</u>[9]

Plaintiff has filed two replies.  (ECF Nos. 89, 90).  His first reply states that his motions "did contain facts and evidence to support why each defendant took measures to destroy hallway footage that did exist."  (ECF No. 89 at 1).  He reiterates that Defendants' counsel "admitted to not having preserved" the hallway video.  (*Id.*).  His second reply argues that Defendants were "made aware" of the litigation when he filed his grievance and Defendants should have acted to preserve the hallway video at that time.  (ECF No. 90 at 1).

### III.  **<u>DISCUSSION</u>**

#### A.  **This Court's Authority**

Pretrial matters "not dispositive of a party's claim or defense" may be referred to a magistrate judge for hearing and decision, subject to review by the district judge on a "clearly erroneous" or "contrary to law" standard.  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A).  A motion for discovery sanctions under Rule 37 of the Federal Rules of Civil Procedure is ordinarily considered non-dispositive, unless the sanction deployed disposes of a claim or defense.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). For the reasons discussed below, the Court finds that case-dispositive sanctions are unwarranted. As a result, the Court has authority to impose Rule 37(e) sanctions pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a) of the Federal Rules of Civil procedure.

#### B.  **Legal Standard**

"Spoliation is the destruction or significant alteration of evidence, or the failure to

---

[9] After Defendants filed their response, the Court received letters from Plaintiff, informing the Court that he had been transferred from Clinton Correctional Facility to Green Haven Correctional Facility (ECF Nos. 80, 84).  In response, the Court ordered Defendants to facilitate service of their response on Plaintiff at Green Haven Correctional Facility and the Court provided Plaintiff additional time to reply.  (ECF No. 81).  Defendants complied with the Court's order.  (ECF No. 82).  Subsequently, Plaintiff informed the Court that he was transferred from Green Haven Correctional Facility to Upstate Correctional Facility.  (ECF No. 87).  In response, the Court re-mailed ECF No. 81 to Plaintiff at Upstate Correctional Facility.  (ECF 11/02/2023 Docket Entry).

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."
*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *accord Ottoson v.
SMBC Leasing & Fin. Inc.*, 268 F. Supp. 3d 570, 579 (S.D.N.Y. 2017). The "[C]ourt has wide
discretion in determining whether spoliation sanctions are appropriate." *Ungar v. City of New
York*, No. 21-1384, 2022 WL 10219749, at *3 (2d Cir. Oct. 18, 2022) (Summary Order) (citing
*Fujitsu Ltd. v. FedEx*, 247 F.3d 423, 436 (2d Cir. 2001)). For spoliation relating to electronically
stored information (ESI), Rule 37(e) provides as follows:

> If electronically stored information that should have been preserved in the
> anticipation or conduct of litigation is lost because a party failed to take
> reasonable steps to preserve it, and it cannot be restored or replaced through
> additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may
> order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party
> of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was
>> unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Before determining whether sanctions are appropriate, the Court must first
determine whether the following threshold requirements of Rule 37(e) have been satisfied:
(1) that relevant ESI existed; (2) that the ESI should have been preserved in anticipation of
litigation; (3) the allegedly spoliating party did not take reasonable steps to preserve the ESI; and
(4) that the ESI cannot be entirely restored or replaced. *See Lokai Holdings LLC v. Twin Tiger
USA LLC*, No. 15-cv-9363, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018). The "party
seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by

a preponderance of the evidence." *Ottoson*, 268 F. Supp. 3d at 580; *see, e.g.*, *Castro v. Smith*, No. 16-cv-8147, 2023 WL 5371311, at *7–8 (S.D.N.Y. Aug. 22, 2023) (determining that plaintiff had "met his burden of proving by a preponderance of the evidence that [a] video existed").

**C. Plaintiff Satisfied His Burden of Establishing the Video's Existence.**

As noted above, Plaintiff's spoliation motion is subject to the "obvious requirement that the evidence must have existed." *Ottoson*, 268 F. Supp. 3d at 580 (internal quotation marks omitted). Here, Plaintiff has met his burden of establishing, by a preponderance of the evidence, that the hallway video did exist at some point. Plaintiff declares, under penalty of perjury, that "cameras did in fact exist in all hallways" of Sullivan County Jail, which was "a brand new facility with high tech video surveillance." (ECF No. 74 at 3). Plaintiff also points out that "Defendants supplied video surveillance from B Pod Housing unit (see exhibit A), Medical Unit (see exhibit B), Intake Unit (see exhibit C), but no video surveillance of any of the hallways even though cameras did in fact exist in all hallways of that facility." (*Id.*).

That Defendants now appear to concede that the hallway video once existed bolsters the Court's conclusion.[10] In Defendants' initial response to Plaintiff's motion, defense counsel asserted in a one-page, two paragraph letter to the Court that "no footage of any kind exists . . . because there was never a recording of Plaintiff walking in a hallway on July 6, 2022." (ECF No. 68). When the Court then ordered the parties to substantiate their positions with more robust evidence (ECF No. 69), Defendants switched positions. Rather than argue that the hallway video never existed, Defendants asserted that the video had been destroyed before they

---

[10] The Court recognizes that Defendants may not have intended to concede that the hallway video existed, only that they assume it existed for purposes of this motion. Even so, Defendants' decision to abandon their previous position before the Court without explanation, suggests that they initially overstated the facts and that the hallway video likely did exist at some point.

had any duty to preserve it.  (*See* ECF Nos. 78, 78-1).  To that end, Defendants submitted an affidavit from Warden Smith, explaining that Sullivan County Jail has a video recording system "in which [a] video lasts thirty (30) days until that video is automatically recorded over."  (ECF No. 78-1 at 2).  Warden Smith added that it was not until November 28, 2022, that he "had notice of Plaintiff's allegation against Sergeant Moyer, Corporal Sherota, Sergeant Niosi for the first time, which was past the third (30) day recording period."  (*Id.*).  Given Plaintiff's declaration that a hallway video camera did exist and Defendants' lack of evidence to oppose it, the Court assumes—for purposes of this motion—that Plaintiff has established by a preponderance of the evidence, that the hallway video did exist.

### D. Defendants' Duty to Preserve Had Not Yet Arisen When the Hallway Video Was Destroyed Through Defendants' Preexisting Routine Retention/Destruction Policy.

Because the Court assumes that the video did exist at some point, the Court must now determine when Defendants' duty to preserve arose and whether it arose before the video was destroyed.  Fed. R. Civ. P. 37(e); Fed. R. Civ. P. 37 Notes of Advisory Committee on 2015 Amendments ("The rule does not apply when information is lost before a duty to preserve arises.").[11]  "Identifying the boundaries of the duty to preserve [ESI] involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  "In the usual situation, 'the obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'"  *La Belle*, 340 F.R.D. at 82 (alterations omitted) (quoting *Fujitsu*, 247 F.3d at 436).

---

[11] "Although Rule 37(e) does not specifically address the first element of spoliation, courts have recognized that the standard for showing that a party had an obligation to preserve evidence is the same for both ESI and non-ESI."  *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. Jan. 13, 2022); *see* Fed. R. Civ. P. 37 Notes of Advisory Committee on 2015 Amendments ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable.  Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve.").

"Thus, the duty to preserve evidence arises 'most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation.'" *Id.* (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *accord 650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66, 104–05 (2d Cir. 2016).

Here, there are three potential dates on which Defendants' duty to preserve the hallway video may have arisen. The first potential date was July 6, 2022, when the incident occurred, and Plaintiff filed his grievances. (ECF No. 78-3, 78-4.) Plaintiff argues that Defendants knew that he would pursue litigation because of his filing "grievances and formal complaint letters to Harold Smith on July 7th, 2022" about being "physically abused, assaulted and exposed to hands of danger." (ECF No. 74 at 2). An inmate's filing of a grievance may trigger a prison facility's duty to preserve ESI that is relevant to the allegations in the grievance. *See Vega v. Broome Cnty.*, No. 21-cv-788, 2023 WL 6318919, at *7–8 (N.D.N.Y. Sept. 28, 2023) (holding that the filing of an inmate grievance sufficiently triggered the facility's duty to preserve ESI). Additionally, when "a party has knowledge that certain types of incidents tend to trigger litigation . . . a duty to preserve relevant video footage may attach as soon as the triggering incident occurs and prior to when a claim is filed." *Castro*, 2023 WL 5371311, at *8; *accord Taylor v. City of New York*, 293 F.R.D. 601, 610 (S.D.N.Y. 2013). For example, the prison facility's independent knowledge of the incident itself, coupled with their "experience with prior litigation related to alleged uses of force by corrections officers against incarcerated persons" may render it reasonable for the facility to anticipate litigation. *Castro*, 2023 WL 5371311, at *8; *accord Stanbro v. Westchester Cnty. Health Care Corp.*, No. 19-cv-10857, 2021 WL 3863396, at *11 (S.D.N.Y. Aug. 27, 2021) ("Put differently, in addition to evidence that is

relevant for *their* purposes, the department of corrections must preserve evidence that could be relevant for a potential inmate-plaintiff's purposes.") (internal quotation marks omitted).

In *Castro*, for example, prison personnel submitted an "Injury to Inmate Report" and a "Use of Force Incident Report" shortly after the alleged incident. *Castro*, 2023 WL 5371311, at *8. Both reports revealed that the Department of Corrections was on notice that an officer had used force and the inmate had reported for medical attention, stating that he had been hit on the nose. *Id.* Similarly, in *Stanbro*, shortly after the alleged incident, prison medical staff and a hospital employee had informed the facility's warden that an officer's use of force was unnecessary and inappropriate and that the inmate had suffered serious injuries. *Stanbro*, 2021 WL 3863396, at *2–3, 13. In both cases, the courts concluded that these facts, coupled with the prison facility's prior litigation experience with alleged uses of force by corrections officers, should have made the facility reasonably anticipate litigation. *Castro*, 2023 WL 5371311, at *8; *Stanbro*, 2021 WL 3863396, at *13.

Here, Plaintiff's grievances did not allege being assaulted or abused by Defendants and thus did not trigger the prison facility's duty to preserve video relating to his excessive force claim. Nor did the July 6, 2022, incident coupled with the prison facility's prior litigation experience of inmate allegations of force by corrections officers trigger that duty. At the very least, to trigger the duty, the prison facility must have been put on notice about the allegations in some way. *See Kronisch*, 150 F.3d at 126 (explaining that the circumstances must be such that "the party responsible for the destruction . . . should have known that the evidence may be relevant to future litigation"). But, unlike in *Castro* or *Stanbro*, there is no evidence that the prison facility was aware of Plaintiff's allegations of excessive force through independent staff or medical reports submitted around the time of the alleged incident. Rather, here, the Court

only has the two grievances Plaintiff filed on July 6, 2022.  The first grievance alleged that

Deputy Dilpalma had allowed a "documented fight risk" (referring to Cantic) out of his cell, who

then attacked Plaintiff.  (ECF No. 78-3 at 1).  That grievance makes no mention of Plaintiff's

allegation that Defendants used excessive force.  (*See id.*).  Plaintiff's second grievance alleged

that "while [the] incident took place[,] Cpl. Sherola and Sgt. Phil Niosi and Sgt. M. Moyer did

specifically target me and did not provide[] me with adequate medical care."  (ECF No. 78-4 at

1).  Although this grievance refers to being "targeted," it did not allege being assaulted by the

officers themselves.  (*Id.*).  In fact, Corporal Calangelo requested more information about how

Plaintiff was targeted, to which Defendant did not respond.  (*Id.* at 3; *see* ECF No. 78-1 at 2).

Thus, the prison facility could not have learned about Plaintiff's allegations of excessive force

through knowledge of the incident itself or the inmate grievance process.  (ECF Nos. 78-1 at 2;

78-4 at 3).  And because the hallway video purportedly related to Plaintiff's excessive force

claim, Plaintiff's grievances failed to trigger the duty to preserve it.  (*See* ECF No. 66 at 2

(asserting that the hallway video would reveal evidence that "Plaintiff was assaulted by

Defendants")).

     The second potential date on which the prison facility's duty to preserve ESI may have

arisen was on July 25, 2022, when Plaintiff's complaint was docketed in this Court.[12]  (ECF No.

2).  And the third potential date was November 28, 2022, when the U.S. Marshals effected

service of Plaintiff's complaint upon Defendants.  (ECF Nos. 14 to 19).  The filing of a

---

[12] Under the "prison mailbox rule," an inmate's submission is deemed filed when it is deposited in the institution's internal mail system.  *Houston*, 487 U.S. at 270; *Dory*, 999 F.2d at 682; *see supra* note 5.  However, for the purposes of determining when Defendants duty to preserve may have arisen, Defendants could not possibly be made aware of Plaintiff's allegations through Plaintiff's deposit of an envelope containing his complaint in the institution's internal mail system.  Rather, the earliest that Defendants could have possibly learned about the complaint was when the complaint was entered on the Court's docket.  Therefore, the date the complaint was docketed, rather the date when the complaint was deemed filed, is the relevant date for determining when Defendants duty to preserve may have arisen.

complaint triggers a *plaintiff's* duty to preserve electronically stored information.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 532 (S.D.N.Y. 2022) ("In the case of alleged spoliation by a plaintiff, the preservation obligation is deemed to arise on the date the plaintiff sent a demand letter or notice of claim, or filed the complaint.").  But unless Defendants already knew about Plaintiff's allegations, Plaintiff's filing of his complaint with the Court does not trigger Defendants' duty to preserve.  Rather, the complaint must be served on Defendants to trigger that duty.  *Sawyer v. Locy*, No. 19-cv-879, 2021 WL 4458822, at *2 (N.D.N.Y. Sept. 29, 2021) ("[T]here are no facts to support a finding that Defendant should have anticipated litigation until he was served with the Amended Complaint."); *Williams v. Geraci*, No. 14-cv-5742, 2020 WL 5848738, at *13 (E.D.N.Y. Sept. 30, 2020) (holding that a correctional officer did not have notice of likely litigation until the service of complaint); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991) ("[A]t least by the time the complaint was served, Hudson Transit was on notice that maintenance records should be preserved.").

Here, Plaintiff's complaint was docketed on July 25, 2022 (ECF No. 2), but it was not served on Defendants until November 28, 2022 (ECF Nos. 14 to 19).  Because Defendants did not already have sufficient knowledge of Plaintiff's allegations of excessive force, Defendants' duty to preserve ESI did not arise until they were served with the complaint on November 28, 2022.  But by November 28, 2022, the hallway video was destroyed in the ordinary course of business, through Defendants' preexisting retention/destruction policy.  (ECF No. 78-1 at 2).  Warden Smith explained that the Sullivan County Jail has a video recording system "in which [a] video lasts thirty (30) days until that video is automatically recorded over."  (*Id.*).  Here, the incident occurred on July 6, 2022, so that the video would have been overwritten by August 5,

2022.  Thus, Defendants' duty to preserve did not arise until more than three months later, so that the video was destroyed before Defendants' duty to preserve had arisen.  As a result, Plaintiff's Rule 37(e) motions must be denied.

***

The Court recognizes that Plaintiff may be frustrated by this outcome, particularly because he filed his complaint with allegations about Defendants' excessive use of force when the disputed hallway video likely still existed and could have been preserved.  In general, a pro se and incarcerated plaintiff faces an uphill battle in attempting to discover prison facility surveillance video footage that is relevant to his claims.  As is the case with many litigants, prison facilities maintain routine retention/destruction policies for surveillance video footage.  Only after the prison facility's duty to preserve such video is triggered, must the facility suspend its routine policy and preserve it.  *See Castro*, 2023 WL 5371311, at *10 ("Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents.") (alteration and internal quotation marks omitted).

Yet the pro se and incarcerated plaintiff often must jump through several hoops to sufficiently trigger the prison facility's duty to preserve.  The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) mandates that a pretrial detainee or convicted prisoner must first exhaust "such administrative remedies as are available" before filing a Section 1983 complaint in federal court.  In some cases, the pursuit of such exhaustion (through the grievance process, for example) may trigger the duty to preserve.  *See Vega*, 2023 WL 6318919, at *7–8.  In other cases, the nature of the incident itself may trigger such a duty.  *See, e.g.*, *Castro*, 2023 WL 5371311, at *8.  But in many other cases, particularly where the pro se litigant fails to

15

sufficiently set forth his allegations in his grievance, the duty may not yet arise.  This exhaustion

process may take weeks to complete.  By the time the pro se and incarcerated plaintiff files his

complaint, the prison facility's surveillance video footage may have been overwritten in the

ordinary course of the facility's routine retention/destruction policy.

And even if the pro se and incarcerated plaintiff is fortunate enough to have filed his

complaint in federal court before the prison facility's surveillance video footage was

overwritten—as was likely the case here—the duty to preserve still may not have arisen.  Rather,

because defendant might not necessarily know about the complaint or its specific allegations, the

duty to preserve might not arise until the complaint is served on defendant.  As was the case

here, and as is often the case in pro se Section 1983 actions, the complaint might not be served

upon a given defendant until months after the complaint is filed in court.  Thus, by the time a

defendant is served with the complaint, the prison facility's surveillance video footage is likely

to have been overwritten in the ordinary course of the facility's routine retention/destruction

policy.  This is especially the case where the prison facility maintains a policy to overwrite

surveillance video every thirty days.

Unfortunately, in these kinds of cases, ESI relevant to a pro se and incarcerated plaintiff's

claims may be destroyed through no fault of either party.  But future losses may be avoided by

the prudent pro se litigant, who provides the prison facility with sufficient notice of his

allegations as early as possible and sends the facility a "legal hold notice" or "preservation

notice," indicating that the evidence may be relevant to future litigation.  *See The Sedona*

*Principles Third Edition: Best Practices, Recommendations & Principles for Addressing*

*Electronic Document Production*, 19 SEDONA CONF. J. 1, 103–08 (2018) ("Parties should, in

most circumstances, send notices to preserve relevant information to persons having relevant ESI

16

or responsible for maintaining systems containing relevant ESI."); *see, e.g.*, *Castro*, 2023 WL 5371311, at *9 (observing that the Legal Aid Society had sent DOC a letter on behalf of an inmate-plaintiff, "requesting an investigation into the incident and asking DOC to confirm that 'the Department will take steps to preserve all photographs'"); *Vega*, 2023 WL 6318919, at *7 (holding that a prison facility's duty to preserve ESI had been triggered by plaintiff's filing of a grievance, "which provided his version of the relevant events," and said, "I got a lawyer to file a lawsuit").

## IV.  **CONCLUSION**

For all these reasons, Plaintiff's letter motions for Rule 37(e) spoliation sanctions are **DENIED**.

The Clerk of Court is respectfully directed to terminate the pending letter motions at ECF Nos. 66, 70, 74, 76, and 80.

**SO ORDERED.**

DATED:      White Plains, New York
              January 2, 2024

VICTORIA REZNIK
United States Magistrate Judge